## Reid, Murdoch & Co. v. Jay K. Sheffy, Receiver, and Plano Mfg. Co.

1. FRAUDULENT SALES—*When Void and When Voidable.*—Where goods are obtained upon false representations by the vendee as to his character, financial ability and intentions as to the goods, the sale is merely voidable and a *bona fide* purchaser from the vendee will acquire a good title; but where the deception practiced upon the vendee is such that there is in reality no meeting of the minds of the parties, the sale is actually void and a *bona fide* purchaser from the apparent vendee will acquire no title.

2. CONSTRUCTIVE TRUSTS—*When They Arise.*—A constructive trust arises whenever another's property has been wrongfully obtained, appropriated and converted into a different form. If a trustee or other fiduciary person wrongfully converts goods held in trust into a different species of property, taking to himself the title, or if an agent or bailee wrongfully disposes of his principal securities and with the proceeds purchases other securities in his own name, equity will impress a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified, into whosesoever hands it may come, except those of a *bona fide* purchaser for value and without notice.

3. SAME—*Application of the Doctrine.*—Whenever one person has wrongfully taken the property of another and converted it into a new form, or transferred it, a trust arises and follows the property or its proceeds.

Creditor's Bill.—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded with directions. Opinion filed December 12, 1901.

Statement.—This is an appeal from an order of the Circuit Court of Cook County sustaining the separate demurrers of Jay M. Sheffy, receiver, and the Plano Manufacturing Company to an amended petition of Reid, Murdoch & Company, intervenors, said petition being filed in a certain cause wherein the Plano Manufacturing Company was complainant, and Lillian E. Amphlett et al., defendants.

On December 30, 1896, the Plano Manufacturing Company filed in the Circuit Court a creditor's bill upon a judgment obtained by that company in said court on the

3d day of August, 1896, for the sum of $815.15 and costs, against T. G. Amphlett, John B. Amphlett and T. L. Amphlett. On the same day Jay K. Sheffy, one of the appellees, was appointed receiver of the effects of the said John B., T. G. and T. L. Amphlett.

On the first day of February, 1897, an order was entered by the court directing the receiver to take possession of the grocery store in question. On February 6, A. D. 1897, Reid, Murdoch & Company, the appellants and intervenors, filed their intervening petition, setting up the purchase by the intervenors from Lillian E. Amphlett on January 30, 1897, of the grocery store in question, for a pre-existing indebtedness due to them on account, and asked that the receiver be required to turn over said property to the intervenors; and on February 10, 1897, filed an amended petition in substance as follows :

The petition of Reid, Murdoch & Co., respectfully represents that in the year 1890 Lillian E. Amphlett engaged in the retail grocery business at No. 4845 North Clark street; that the business was run and conducted in the name of Lillian E. Amphlett as sole proprietor; that the fact that Lillian E. Amphlett was the owner and proprietor of the said cash grocery became and was generally known to the complainants in this cause, and during the time she ran said business, up to and including the time hereinafter mentioned, she acquired a certain credit and rating among the business houses and the commercial agencies, whose business it is and was to report the standing of the different persons, firms and corporations, doing business in that vicinity and elsewhere; that in or about the month of February, 1893, the said Lillian E. Amphlett commenced to trade with your petitioner and your petitioner caused an investigation to be made as to the ownership of the said business known as Amphlett's Cash Grocery, and so alleged to be owned and conducted by the said Lillian E. Amphlett, and obtained a statement from the said Lillian E. Amphlett; that both the said Lillian E. Amphlett and her husband, John B. Amphlett, stated that Lillian E. Amphlett was the

owner of said grocery store, goods, chattels, accounts and business, and sole proprietor thereof; that no other person or persons had any interest therein; and based upon said statement and apparent ownership by her, your petitioner extended credit to the said Lillian E. Amphlett; that she purchased goods in her own name, and dealt with your petitioner continuously upon an open running account down to and including the 30th of January, 1897, and on the 30th of January, 1897, the said Lillian E. Amphlett was indebted to your petitioner in the sum of six hundred ninety-two dollars and eighty-nine cents ($692.89) after allowing all just credits, deductions and set-offs for and on account of a balance due your petitioner by reason of the purchase by her of goods, wares and merchandise and credits allowed from your petitioner from the time she commenced trading with your petitioner down to the date hereinbefore mentioned.

Your petitioner further represents that the goods so purchased from your petitioner by the said Lillian E. Amphlett were used by her in said business and resold by her at a profit, the said profit reinvested in said business and other goods purchased by her.

Your petitioner further represents that John B. Amphlett, T. G. Amphlett and T. L. Amphlett were indebted to the complainant in this cause in a large sum of money and that said indebtedness was long past due and payable to the said complainant from the said John B. Amphlett and T. G. Amphlett and T. L. Amphlett at the time the said Lillian E. Amphlett first engaged in the business in 1890; that during all the time, to wit, from 1890 down to the filing of the bill herein, the said complainant had notice that the said Lillian E. Amphlett was conducting said grocery business at Rogers Park in her own name, and that notwithstanding that said debt was due the said complainant, it permitted her to so continue in said business without molestation, and to obtain goods from your petitioner and other persons, firms and corporations upon the strength of her ownership of said business down to the date of the filing

of the bill of complaint herein; that on the evening of the 30th of January, 1897, said Lillian E. Amphlett agreed with your petitioner to, and did sell and convey by bill of sale, all and singular the goods, wares and merchandise in said store, more specifically set forth in said bill of sale; that said goods and chattels described therein were accepted in full payment and satisfaction of the then existing debt due by her to your petitioner; that your petitioner entered into and took possession of all the articles described in said bill of sale, save the book accounts; that said possession continued until this petitioner was ordered by this honorable court to deliver possession to James K. Sheffy, receiver herein; that this petitioner delivered possession to said receiver pending settlement and adjustment of your petitioner's rights.

Your petitioner further alleges it had no knowledge or notice of the pending litigation, and was not notified by Lillian E. Amphlett or any one representing her; that it knew of no secret lien; that said petitioner purchased the above goods for the consideration above set forth; that it was a *bona fide* one, made in good faith.

Your petitioner further represents that the said goods which were turned over to the said receiver, were a large part of the goods and chattels which the said Lillian E. Amphlett had purchased from your petitioner, and that the residue was largely composed of the goods and chattels which were purchased by the said Lillian E. Amphlett by the money derived from the sale of the goods and chattels purchased from your petitioner.

Your petitioner further represents that the indebtedness upon which the judgment of the Plano Manufacturing Company against John E. Amphlett, T. G. Amphlett and T. L. Amphlett is rendered, had accrued long prior to the time that the said Lillian E. Amphlett commenced in business, and that the said Plano Manufacturing Company had taken no steps whatever to enforce their rights, if any, against the said Lillian E. Amphlett or upon the said judgment from the time she commenced in business until the creditor's bill was filed in this cause.

Your petitioner, therefore, prays that an order may be entered ordering and directing the said receiver and said complainant to re-deliver to your petitioner so many of the said goods and chattels taken from your petitioner by said receiver as will satisfy the claim of your petitioner to the amount above mentioned, or in lieu thereof that they may be decreed to pay to your petitioner the sum of six hundred ninety-two dollars and eighty-nine cents ($692.89), together with the costs of these proceedings, and your petitioner prays for such other and further relief as equity may require or to your honor shall seem meet.

Reid, Murdoch & Co.,<br>By Wm. F. Bode.

As above stated a demurrer to this petition was sustained.

H. G. Colson, attorney for appellants.

Archibald Cattell, attorney for the receiver.

David F. Matchett, attorney for the Plano Mfg. Co.

Mr. Justice Waterman delivered the opinion of the court.

That fraud vitiates all acts, and that a vendor from whom goods have been obtained by fraud on the part of the vendee may rescind and retake the goods, are matters concerning which there is no dispute.

The question whether a sale, or rather an apparent or attempted sale, is absolutely void, or merely voidable at the instance of the vendor, and whether a *bona fide* purchaser from the vendee acquires, as against the vendor, a good title to goods intended to be, or apparently sold, has frequently arisen and been discussed; the rule seeming to be that where goods are obtained upon false representations by the vendee as to his character, financial ability and intentions as to the goods, the sale is merely voidable, and a *bona fide* purchaser from the vendee will acquire a good title; but where the deception practiced upon the vendor is such that there is in reality no meeting of the minds of the parties, the sale

is actually void and a *bona fide* purchaser from the apparent vendee will acquire no title. That in such an instance as is presented in this case—goods having been sold by appellants, as they believed, to Lillian E. Amphlett, she representing that she was buying them for herself, when in reality she bought the goods for three other parties and had no interest in them or their purchase save as the agent of said third parties—it has ever been held that the three concealed and unknown parties could hold goods so obtained against the vendor, we are unaware.

In Lindsay et al. v. Cundy et al., Law Reports, Queen's Bench Div., 2d App., it appeared that one Blenkarn took premises at 37 Wood street and wrote to the plaintiffs at Belfast ordering goods of them. The letters were dated 37 Wood street, and signed A. Blenkarn & Co., in such a way as to look like A. Blenkiron & Co., there being an old established firm of Blenkiron & Sons at 123 Wood street, which the plaintiffs knew. They supplied the ordered goods, addressing them to A. Blenkiron & Co., 37 Wood street. The defendants purchased some of the goods *bona fide* of Blenkarn and re-sold them to other persons. The plaintiffs brought an action for the conversion of the goods. The court held that the plaintiffs intended to deal with Blenkiron & Sons and therefore there was no contract with Blenkarn; that the property of the goods never passed from the plaintiffs and that they were accordingly entitled to recover in the action.

In Reed v. Barnett, Law Reports, 3d Chancery Div. 123, it appeared that a liquidating debtor who had not obtained his discharge, ordered goods from a wholesale house which sent the goods to him in the belief that the order had come from a firm with whom they were acquainted and whose name resembled that under which the debtor traded. The debtor's trustee under the liquidation proceedings endeavored to hold the goods. The court say :

" If the law enabled the trustee to keep possession of these goods it would be a very singular law. The trustee has no right to these goods, but is bound to return them to the true owners unless he, indeed, is willing to pay the price

of them.   He ought not to have resisted the claim of the appellants.   It was simply dishonesty to do so."

In Bush et al. v. Fry et al., 15 Ont. 124, it appeared a person at Beardstown, Illinois, had represented to a dealer in Chicago that he had a customer named Johnston to whom he could sell a piano and desired him to ship one in their name to be subject to their order, he, the music teacher, to pay freight charges in case of no sale and return the piano to the plaintiff, he, the music teacher, simply acting as their agent.   The piano was shipped to him, whereupon he sent the same to Canada and pledged it for money borrowed.   The court held "that no title to the piano ever passed to the music teacher, as it was never intended that there should."

Appellants never intended to sell any goods to the judgment debtors of the Plano Manufacturing Company against whom it filed its creditor's bill, and consequently no title to goods parted with by appellants, with the belief that they were dealing with Lillian E. Amphlett only, was acquired by any of said judgment debtors.

Under the finding of the court below that the store carried on by Lillian E. Amphlett was in realty the property and business of the judgment debtors, John B., T. G. and T. L. Amphlett, all goods obtained by Lillian from appellants were obtained by fraud, not only upon her part, but also on the part of John B., T. G. and T. L. Amphlett.

The decree of the court below, by which goods so obtained were to be devoted to a payment of the debt of John B., T. G. and T. L. Amphlett to the Plano Manufacturing Company, carries into effect the fraud of the Amphletts, and enables John B., T. G. and T. L. Amphlett to pay their debt to the Plano Manufacturing Company with goods fraudulently obtained from appellant.   A court of equity will never "rob Peter to pay Paul."

It is urged by appellees that appellants, having taken a bill of sale from Lillian E. Amphlett of the goods in her store, and therefore canceled her debt to them, thereby ratified the action under which the goods were obtained from them, and lost all right to retake their goods.

It does not appear that appellants, when they took this bill of sale, were aware that the store in reality belonged to John B., T. G. and T. L. Amphlett, and that the goods therein had been obtained by fraud. But if they did know these facts, we do not perceive that it would have made any difference. Having ascertained that the goods had been obtained by fraud, appellants might have replevied the goods which they had parted with, but if Lillian Amphlett was willing to surrender them without such action, we see no reason why they should not have accepted her surrender; and, necessarily, the retaking of the goods, either by replevin or by voluntary surrender, would have discharged the obligation of Lillian Amphlett to pay for them. Nor do we think that if the first petition filed by appellants placed their right to hold the goods upon the surrender of them, or the bill of sale to them made by Lillian Amphlett, it deprived them of their right to insist that the goods had been obtained from them by such a fraud as that against them, none of the Amphletts obtained any title thereto. Taking the bill of sale, as appellants did, apparently without any knowledge of the fraud perpetrated by the Amphletts, or of the creditor's bill filed by the Plano Manufacturing Company, it was quite natural for them to file their first petition, relying upon the title they had acquired under the bill of sale. Indeed, while the right to hold the goods, because they had been induced to part with the possession of them by fraud, was set up in the amended petition which we are now considering, it does not seem to have been clearly urged, on argument, to the chancellor before whom the demurrer to said position was heard.

Can appellants, of the goods surrendered to them by Lillian Amphlett, hold other than those which they had themselves parted with the possession of, under the fraudulent representations made to them? In other words, have they a right to goods which, while not directly obtained from them, are the proceeds of goods which they parted with in consequence of the fraudulent representations and practices of the Amphletts?

The Plano Manufacturing Company did not, as it might, have their execution levied upon the goods in the store carried on by Lillian E. Amphlett. They have resorted to a court of equity, and, being now in a court of equity, the goods kept by Lillian Amphlett in her store, and by her voluntarily surrendered to appellants in satisfaction of her debt to them, are to be treated and disposed of in accordance with equitable principles. Obtaining goods from appellants as she did, neither Lillian, John B., T. G. or T. L. Amphlett acquired title thereto; delivered, as the goods were, into the possession of Lillian, in the view of a court of equity, she received them merely in trust, holding them for the benefit of their true owners—appellants.

A constructive trust arises whenever another's property has been wrongfully obtained, appropriated and converted into a different form. If a trustee or other fiduciary person wrongfully converts goods held in trust into a different species of property, taking to himself the title, or if an agent or bailee wrongfully disposes of his principal securities and with the proceeds purchases other securities in his own name, in these and all similar cases, equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified, into whosesoever hands it may come, except those of a *bona fide* purchaser for value and without notice. As a necessary consequence of this doctrine, whenever property subject to a trust is wrongfully sold and transferred to a *bona fide* purchaser so that it is freed from the trust, the trust immediately attaches to the price or proceeds in the hands of the vendor, whether such price be a debt yet unpaid due from the purchaser or a different kind of property taken instead, or even a sum of money paid to the vendor, so long as the money can be identified and is left in his hands or under his control. Pomeroy's Equity Jurisprudence, Sec. 1044–1848–1051.

It is not essential for the application of this rule that an actual trust or fiduciary relation should exist between the

198    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] First Nat. Bank v. Barse Live Stock Commission Co.

original wrongdoer and the beneficial owner. Whenever one person has wrongfully taken the property of another and converted it into a new form or transferred it, a trust arises and follows the property or its proceeds. Pomeroy's Equity Jurisprudence, Sec. 1051.

The decree of the Circuit Court is reversed and the cause remanded with directions to overrule the demurrer to appellant's amended petition and for further proceedings in this cause not inconsistent with this opinion. . Reversed and remanded with directions.