Home Fuel and Supply Company, Appellee, v.
Dr. O. A. Rawlins, Appellant.

Gen. No. 40,181

Heard in the first division of this court for the first district at the June term, 1938. Opinion filed November 21, 1938.

STEVENS & CARRIER, of Chicago, for appellant; GEORGE M. STEVENS and GEORGE M. STEVENS, JR., of counsel.

OSCAR B. MCGLASSON, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

December 14, 1936, plaintiff brought an action of replevin against defendant to recover a certain quantity of coal. All the coal except a very small portion was taken on the writ from defendant and delivered to plaintiff. There was a trial before the court without a jury, a finding that plaintiff was entitled to possession of the coal, its damages assessed for the wrongful detention at $67.26, and defendant appeals.

The record discloses that plaintiff was engaged in the coal business in Chicago, and that defendant, a practicing physician, owned three buildings in Chicago; that about December 1, 1936, plaintiff received a telephone order from Miss Julia Thon for the coal in question to be delivered by plaintiff to defendant, some to each of defendant's three buildings. The coal was delivered to the buildings December 1, 2, 3, 4 and 5. The sale was for cash and December 10 plaintiff wrote defendant a letter enclosing the invoices for the coal and saying that a representative of plaintiff would call the next day at defendant's office for payment. On the next day defendant refused to pay, saying he had bought the coal from Miss Thon and had, several months prior to delivery of the coal, advanced $1,500 to her for coal he would thereafter purchase from her. Miss Thon was credited with the price of the coal out

of the $1,500. Three days later plaintiff brought the instant suit, and all of the coal was taken on the writ except $67.26 worth, which plaintiff said was left at the three buildings so defendant would have enough coal to operate the buildings until he could get more.

Defendant contends that the title and right to possession passed out of plaintiff upon delivery of the coal in question to defendant, Dr. Rawlins, and cases are cited as well as sections of the Uniform Sales Act in support of the contention.

Obviously, before this proposition can be applied we must consider the evidence.

Plaintiff's president testified he had known Miss Thon for some time; that she was a stenographer employed by the Maryland Coal & Coke Company for a number of years, and that plaintiff coal company bought considerable coal from the Maryland Company; that about December 1 Miss Thon telephoned him she was buying some coal for Dr. Rawlins, that she had been buying coal for him from the Racine Fuel Company but wanted to give the business to the plaintiff coal company. The price of the coal was agreed upon, and according to directions given by Miss Thon the coal was delivered within the next few days to Dr. Rawlins' three buildings. There are also in evidence plaintiff's delivery tickets showing the coal was delivered to the three buildings on the 1st, 2nd, 3rd, 4th and 5th of December; these tickets were receipted by various persons, one of them being signed by the Doctor himself.

December 10 plaintiff's president wrote defendant, enclosing invoices for the coal delivered, each stating the terms were "net cash upon receipt of invoices," the total price of the coal being $500.73. The letter said some one would stop at the Doctor's office the next evening and pick up the check. December 11 the witness called the Doctor on the telephone and said that

pursuant to the letter he had written to defendant the day before he would call for the check, but was then told by defendant that he had bought the coal from Miss Thon, not from plaintiff, and he had paid her for the coal. Plaintiff thereupon said they would have to replevin the coal; two or three days later the suit was brought and the coal taken on the writ, as above stated.

Dr. Rawlins, the defendant, testified that he was a practicing physician in Chicago and had known Miss Thon very well for 12 or 13 years; that during that time he bought all his coal from her; that she was in the coal business connected with the Belmont Coal Company, later with the Belmont Fuel Company and still later with the Southern Fuel Company, and that she also told him she was connected with the Maryland Fuel Company, a wholesale coal company; that during the period of years that he had bought coal from Miss Thon some of it came from plaintiff coal company; "I paid for this coal [the coal in question] in advance. I had advanced the money"; that he had received plaintiff's letter of December 10, inclosing the invoices, the following day and was dictating a reply when plaintiff's president called him on the telephone, saying he would call for the check, and defendant thereupon told him he did not owe him anything, that he had bought the coal from Miss Thon; he further testified that "when Miss Thon came up she receipted these statements. The date '12/5/36' indicates the date of our adjustment of accounts"; that he advanced to Miss Thon more money than was necessary to pay for the coal and that her signature appears on each of the invoices. On cross-examination he was asked if he did not owe Miss Thon for coal he had purchased a year before; he answered that he did not, that he always paid her cash. "And in June, 1936, I advanced her money and I advanced her as much as $1,500 in order to get a good price." Miss Thon did not testify and there is no explanation as to why she was not called.

There is other evidence in the record but we think it unnecessary to detail further. We are also of opinion it would serve no useful purpose to discuss the statute and authorities cited by counsel for defendant because we have reached the conclusion that the judgment must be affirmed. Looking at the evidence in the view most favorable to defendant, we think the question of whether the coal was sold to Miss Thon or to defendant was one of fact to be decided by the court. The Court apparently found in favor of plaintiff on this question and we are clear we would not be warranted in disturbing his finding on the ground that it is against the manifest weight of the evidence. The sale was for cash and since the coal was not paid for upon delivery plaintiff was at liberty to treat the sale as conditional and reclaim it. *Cheatle v. MacVeagh,* 83 Ill. App. 336; *Canadian Bank v. McCrea,* 106 Ill. 281. In the *Cheatle* case the court said: "The goods having been put into appellants' possession in the expectation that the price would be immediately paid, appellees were at liberty to treat the sale as conditional and reclaim the goods. *Canadian Bank v. McCrea,* 106 Ill. 281–298." In the *McCrea* case the court said (p. 289): "It is not contested, in argument, that the law is, where personal property, other than commercial paper, is, by contract, sold for cash, to be paid on delivery, the delivery and payment are to be concurrent acts, and, therefore, if the goods are put into possession of the buyer in expectation that he will immediately pay the price, and he does not do it, the seller is at liberty to regard the delivery as conditional, and may at once reclaim the goods."

But whether the law as above stated has been changed or modified by the enactment of our Uniform Sales Act, or whether the facts in the case from which we have above quoted are distinguishable from the facts in the instant case, so as to make the principle announced in those cases inapplicable, is not of con-

trolling importance, as we are of opinion the court was warranted in any view of the evidence in finding that in reality there was no meeting of the minds of the parties and consequently no sale of the coal. Plaintiff's president testified he sold the coal to Dr. Rawlins and delivered it to him, terms cash; Dr. Rawlins testified that he bought the coal from Miss Thon. If the court believed what each one said there was no sale because there was no meeting of the minds, and therefore when defendant did not see fit to pay for the coal plaintiff was entitled to repossess itself of it. *Reid, Murdock & Co. v. Sheffy,* 99 Ill. App. 189. In that case one of the questions involved was whether there was a sale of a store by Lillian E. Amphlett to the Plano Manufacturing Company. It was contended she did not own the store but that it was owned by other parties. The court there said the question whether a sale or an apparent sale was absolutely void or merely voidable at the instance of the vendor, and whether a *bona fide* purchaser from the vendee acquires, as against the vendor, a good title to the goods, had frequently arisen and been discussed, "the rule seeming to be that where goods are obtained upon false representations by the vendee as to his character, financial ability and intentions as to the goods, the sale is merely voidable, and a *bona fide* purchaser from the vendee will acquire a good title; but where the deception practiced upon the vendor is such that there is in reality no meeting of the minds of the parties, the sale is actually void and a *bona fide* purchaser from the apparent vendee will acquire no title. That in such an instance as is presented in this case—goods having been sold by appellants, as they believed, to Lillian E. Amphlett, she representing that she was buying them for herself, when in reality she bought the goods for three other parties and had no interest in them or their purchase save as the agent of said third parties

—it has ever been held that the three concealed and unknown parties could hold goods so obtained against the vendor, we are unaware.''

In the instant case on each occasion when coal was delivered by plaintiff to defendant's buildings it was receipted for by some one at the several buildings, one of the tickets being signed by Dr. Rawlins himself. A few days later plaintiff wrote defendant, enclosing the invoices for the coal, saying some one would call the next day for the check. This was December 11. After the 11th, the exact date not appearing, Miss Thon called on defendant and receipted the invoices, dating each of the receipts December 5, 1936. The court might well have found there was no satisfactory explanation of this.

Upon a consideration of all the evidence we are of opinion the judgment ought to be and it is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.